(152 App. Div. 733.)

MACKMULL v. BRANDLEIN et ux.

BADER et al. v. SAME.

(Supreme Court, Appellate Division, Second Department. October 4, 1912.)

1. EVIDENCE (§ 65*)—PRESUMPTIONS—KNOWLEDGE OF LAW.
Every person is presumed to know the law.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 85; Dec. Dig. § 65.*]

2. VENDOR AND PURCHASER (§ 334*)—PURCHASER OF TENEMENT HOUSE.
Tenement House Law (Laws 1901, c. 334) § 122, as amended by Laws 1909, c. 354, § 8, effective May 15, 1909, provided that if any building, constructed as, or altered into, a tenement house should be occupied for human habitation in violation of the preceding section, which required a certificate of compliance with the statute, during such unlawful occupation any mortgage upon the premises might be declared due at the mortgagee's option, provided that any tenement house, erected after April 10, 1901, occupied for human habitation for two years immediately preceding January 1, 1909, in which no alterations had been made except in compliance with the chapter, might be occupied as if a certificate had been issued that such tenement house conformed to the requirements of the chapter, unless an action to require it to be vacated shall have been brought within six months after the passage of the act. Plaintiff pur-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

chased a tenement house from defendant in 1906, which was completed that year, and collected the rents up to 1910, when she brought an action for damages resulting from the failure of the building to comply with the tenement house regulations, pursuant to defendants' representation. The building had been occupied as a human habitation since it was built, and no alteration was made by plaintiff. *Held*, that the statute was applicable to prevent plaintiff from recovering damages, or having the deed canceled and the purchase money returned, on the ground that the house did not comply with the tenement house regulations, according to defendants' representations.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 959–980; Dec. Dig. § 334.*]

3. STATUTES (§ 228*)—CONSTRUCTION OF "PROVISO."

The province of a "proviso" is to restrain the enacting clause of a statute, and to except something which would otherwise have been within it, or to modify the enacting clause.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 310; Dec. Dig. § 228.*

For other definitions, see Words and Phrases, vol. 6, pp. 5755–5757.]

4. STATUTES (§ 40*)—"ENACTING CLAUSE."

The "enacting clause" of a statute is that part which enacts any rule or regulation, no matter what place it occupies in the statute.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 43, 44; Dec. Dig. § 40.*

For other definitions, see Words and Phrases, vol. 3, pp. 2384, 2385.]

Appeal from Special Term, Queens County.

Actions by Magdalena Mackmull and by Frank Bader and another against Christian Brandlein and wife. From a judgment for plaintiffs in each case, defendants appeal. Reversed, and new trial granted.

Argued before HIRSCHBERG, BURR, THOMAS, WOODWARD, and RICH, JJ.

Anson Burlingame Cole, of New York City, for appellants.
Henry Schoenherr, of Brooklyn, for respondents.

WOODWARD, J. These actions involve the same question of law, were argued together, and will be treated as one case. Magdalena Mackmull's case presents the most favorable state of facts for the plaintiffs, though there is so little difference in them that there is no occasion for distinguishing them, and we will use the facts in her case for the purposes of this appeal.

She testifies that she bought the house in question in 1906; that she first saw Mr. Brandlein about the house upon a Sunday in September of that year, and that Mrs. Brandlein was present at the conversation; that Mr. Brandlein did the most of the talking, speaking in German; that he told her the house was all right; that:

"He said to me, before I paid him money on account, that the house was all right, and I would never have any trouble with it, and these are the last houses that would be allowed to be built that way according to law. He said nothing further, or not much further. I believed what he said to me, and paid him $25 on account then. I had some trouble with the tenement house department about those houses. The inspectors came then in 1908."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It was not disputed that in 1910, prior to the commencement of the present action, the plaintiff tendered a deed to the defendants and demanded a return of the money paid for the premises, with interest, claiming that the houses did not comply with the Tenement House Law, and that the defendants refused to accept the deed or to repay the money. The original contract, bearing date of December 17, 1906, was placed in evidence, and the plaintiff on cross-examination testified as to the presence of several people at the conversation which took place on Sunday prior to the making of the contract, when she paid over $25 on the contract, and that she had no other conversation about the tenement house. This is the only evidence of fraudulent misrepresentation, except that there is a stipulation in the case which tends to show that the buildings did not conform to all of the requirements of the Tenement House Law as it was at the time of the sale of the buildings in 1906.

The defendant testifies, without contradiction, that the plaintiff came to him and offered to purchase the houses; that he lived in the houses at the time, and that he showed them to the plaintiff, and told her they were all right; that they were well built. He says the buildings were completely finished at the time, in August, 1906, and in response to questions by the court he testified that at the time of the sale six families were living in the house; that the plaintiff asked him about the tax rents, and that he told her $12 and $13 rent, six-family house.

"I told her there were six families, and the rents were $12 and $13 for each apartment. I can't remember any more if I said to her that those houses were the last to be built according to the old law. I can't remember that no more; no, sir, I do not remember. I don't know, because I can't remember that I said that word."

This is the extent of the evidence in support of the allegation of fraudulent misrepresentation.

[1] The plaintiff, in common with all other persons, is presumed to know the law, and she personally visited the premises, and was told that it was occupied by six families, each of whom were paying $12 or $13 per month. Knowing the law, she saw the building and its appointments, and she was in a position to know that it did not comply with the law as it then stood; and it is very doubtful, assuming the defendant to have used the language ascribed to him, if either of the parties understood that he was guaranteeing that the house complied with the Tenement House Law, or that it was outside of its provisions.

[2] Assuming, however, that the representation was made, that it was false, and that the plaintiff relied upon the statement, where is the element of damage? Is there any question that she received exactly what was shown her as constituting the property? She took title to the premises, it should be remembered, in 1906, entering into possession at once; and it is conceded that she had collected rents to the amount of $2,605.50 up to the time of the commencement of this action on the 1st day of October, 1910. While thus in possession and collecting her rents, she testifies that she "had some trouble with the

tenement house department about those houses. The inspectors came then in 1908." What the trouble was does not appear. She was certainly not called upon to vacate the houses, for she went on collecting rents for two years, and without making a move to rescind the contract, and there is no evidence from which it can be inferred that she had any legal difficulties in reference to the houses. In the meantime the Legislature of the state of New York amended the Tenement House Law, and, after providing all of the details, section 122 was made to read that:

"If any building hereafter constructed as or altered into a tenement house be occupied in whole or in part for human habitation in violation of the last section" (which provided for a certificate of compliance with the terms of the statute), "during such unlawful occupation any bond or note secured by a mortgage upon said building, or the lot upon which it stands, may be declared due at the option of the mortgagee. * * * Provided, however, that any tenement house erected after April.tenth, nineteen hundred and one, and which has been occupied for human habitation for two years immediately preceding the first day of January, nineteen hundred and nine, in which no changes or alterations have been made except in compliance with this chapter, shall be permitted to be occupied in the same manner as if a certificate had been issued that such tenement house conforms in all respects to the requirements of this chapter, unless an action or proceeding to require it to be vacated shall have been brought within six months after the passage of this act."

This provision was enacted and became effective on the 15th day of May, 1909. The building, in the possession of the plaintiff, had been occupied as a human habitation for two years prior to the 1st day of January, 1909. If it had been altered at all, it had been altered by the plaintiff, and there is no evidence and no presumption in support of the theory that it had been altered, and at the time of the commencement of this action in 1910 more than six months had elapsed from the date of the passage of the act, and no action is alleged to have been started to require it to be vacated. The building was constructed after April 10, 1901, the exact time being the year 1906, the evidence being undisputed that it was commenced and completed within that year; so that all of the conditions to entitle the plaintiff to the possession and occupation of the premises, exactly as she purchased them, have been fulfilled.

Whether the statements were made by the defendant or not, whether they were true at the time they were uttered, is of no consequence to-day, because the plaintiff, in the possession of the premises, has neglected to act until the statements, for all practicable purposes, have become true. Whatever may have been her rights at the time of the alleged trouble in 1908, she elected to remain in possession and to stand upon her rights under her title from the defendants, and when the Legislature in 1909 established a short statute of limitations, the effect of which was to permit her to continue to occupy the premises the same as though the statute had been complied with, and when that statute had run, she was exactly in the position in which she would have been if the alleged false statements had been true, and there was no room for any damages. This being true, the

plaintiff could have no cause of action against the defendants, and the complaint should have been dismissed.

[3] The language of the proviso is broad and comprehensive, and it is the province of a proviso to restrain the enacting clause, and to except something which would otherwise have been within it, or, in some measure, to modify the enacting clause. Wayman v. Southard, 10 Wheat. 30, 6 L. Ed. 253.

[4] And the "enacting clause," as understood by the courts, is that part of the statute which enacts any rule or regulation, no matter what particular place it may occupy in the enactment. United States v. Cook, 17 Wall. 168, 176, 21 L. Ed. 538. Here we have a general statute, enacting rules and regulations for tenement houses, with a proviso that under certain circumstances a particular class of such tenement houses "shall be permitted to be occupied in the same manner as if a certificate had been issued that such tenement house conforms in all respects to the requirements of this chapter." Obviously the intent of this provision was to take out of the operation of the statute such tenement houses as had been constructed after the enactment of the original Tenement House Law in 1901, where there had been a human occupation for two years preceding the amendment, and no action was taken to enforce the statute within six months, and any one who had been in possession of a tenement house during the time, and who has all of the benefits which could have come if the house complied with the law, is not in a position to complain of an alleged fraud committed in 1906, and which had been acquiesced in until the Legislature had prevented any possible damage from the alleged fraud. The plaintiff, at the time of bringing this action, had exactly what she contracted for. She had the building which was displayed to her, with the capacity which was then stated, and which complied with the requirements of the law, and this is all she had a right to claim or enjoy.

The judgments in both cases should be reversed, and new trials granted; costs to abide the final award of costs. All concur.